<u>**NOT FOR PUBLICATION**</u>

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LARRY MARTIN, et al., | : | Civil. No. 06-4293 (FSH) |
| | : | |
| Plaintiffs, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| CITY OF EAST ORANGE, et al., | : | Date: February 9, 2009 |
| | : | |
| Defendants. | : | |

**<u>HOCHBERG, District Judge:</u>**

This matter comes before the Court upon two Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 - one filed by Defendants East Orange Board of Police Commissioners, Cross, Maddox, White, Harrison and Merinvil (Docket # 57) and one filed by Defendants City of East Orange and East Orange Police Department (Docket # 68). The Court has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78.

**I.     <u>Background</u>**

Plaintiffs Larry Martin ("Martin") and Reginald Butts ("Butts") are currently sergeants employed by the City of East Orange Police Department (the "Police Department"). Martin has been employed by the Police Department since approximately 1995; Butts has been employed since approximately 1993.

Defendant City of East Orange (the "City") is a municipal corporation within the state of New Jersey and an employer within the meaning of the New Jersey Civil Rights Act. The Police

Department is a part of the body politic of the City.  Defendant Charles Grimes was at all relevant times the City's Chief of Police.  Defendants Cross, Maddox, White, Harrison and Merinvil were members of the East Orange Board of Police Commissioners (the "Board").

Among other duties, the Board was responsible for voting to promote police officers from certified Eligible/Failure Rosters prepared by the New Jersey Department of Personnel.[1]  Such promotions were governed by the applicable provisions of N.J.S.A. 11A:4-8, commonly known as the "Rule of Three."  *See also* N.J.A.C. 4A:4-4.8.  The Rule of Three (alternatively, the "Rule") establishes that once candidates have completed qualifying tests, promotions are made from among the candidates with the three highest test scores.[2]  The Rule thus allows employers

---

[1] The Board was ultimately disbanded in 2004, and replaced by a Police Commissioner.

[2] N.J.S.A. 11A:4-8 provides:

> The commission shall certify the three eligibles who have received the highest ranking on an open competitive or promotional list against the first provisional or vacancy. For each additional provisional or vacancy against whom a certification is issued at that time, the commission shall certify the next ranked eligible. If more than one eligible has the same score, the tie shall not be broken and they shall have the same rank. If three or more eligibles can be certified as the result of the ranking without resorting to all three highest scores, only those eligibles shall be so certified.
>
> A certification that contains the names of at least three interested eligibles shall be complete and a regular appointment shall be made from among those eligibles. An eligible on an incomplete list shall be entitled to a provisional appointment if a permanent appointment is not made.
>
> Eligibles on any type of reemployment list shall be certified and appointed in the order of their ranking and the certification shall not be considered incomplete.

N.J.A.C. 4A:4-4.8 provides in relevant part that:

> (a) Upon receipt of a certification, an appointing authority shall take whichever of the following actions is appropriate when a permanent appointment is to be made:

to select those individuals who an employer deems best qualified from among a group limited to the top three most objectively qualified. *See in re Crowley*, 193 N.J. Super. 197, 206 (App. Div. 1984). The Rule is "intended to guarantee the appointing authority an opportunity to exercise limited discretion in the selection and promotion of public employees." *Local 518 v. Division of Motor Vehicles and Department of Personnel*, 262 N.J. Super. 598, 600 (App. Div. 1993). It permits an employer broad discretion to select any of the three top candidates provided the non-selection of one of the candidates is not because of a discriminatory intent. *See In re Asplen*, 2008 WL 2656074, *5 (N.J. Super A.D. 2008); *Kiss v. Department of Community Affairs*, 171 N.J. Super. 193 (App. Div. 1979).

An Eligible/Failure Roster for promotion to the rank of sergeant was issued in 2000 (the "2000 Roster") , effective from April 13, 2000 to April 12, 2003. Martin and Butts, then officers, were ranked numbers 32 and 33 respectively when the 2000 Roster was first issued.

---

> 1. Appoint the eligible whose name has been certified from the special reemployment list;
>
> 2. Appoint the eligible whose name has been certified from regular or police or fire reemployment lists; or
>
> 3. Appoint one of the top three interested eligibles (rule of three) from an open competitive or promotional list, provided that:
>
> I. Disabled veterans and then veterans shall be appointed in their order of ranking from an open competitive list;
>
> ii. If the eligible who ranks first on a promotional list is a veteran, then a non-veteran may not be appointed; and
>
> iii. See N.J.A.C. 4A:4-2.15(I) for tie scores.

Over the next two years, officers who had received higher rankings on the basis of their qualifying test scores were promoted. By July 26, 2002, Martin and Butts were the next two eligible candidates on the 2000 Roster. In late 2002, another Eligible/Failure Roster (the "2002 Roster") was published, effective from December 19, 2002 to December 18, 2005, thereby overlapping with the preceding 2000 Roster. Martin and Butts were ranked numbers 7 and 13, respectively, on the 2002 Roster when it was issued.

On March 21, 2003, the Board passed resolutions to promote to the rank of sergeant five officers ranked below Martin and Butts on the 2000 Roster. After the Board's recommendations were announced, both Martin and Butts complained that they had been unfairly bypassed for promotions, although neither complained about discriminatory treatment. These recommended promotions, however, never took effect. On March 28, 2003, the Mayor of East Orange vetoed the Board's recommendations because they did not comply with the requirements of the Rule of Three, as based on the then-current 2000 Roster. The recommended officers were not, in the end, improperly promoted ahead of Plaintiffs and the 2000 Roster ultimately expired without any further promotions being made.

On August 26, 2004, ten officers, including Martin, were promoted based on their rankings on the 2002 Roster. On December 16, 2005, another six officers from the 2002 Roster were promoted to sergeant, including Butts. Both Martin and Butts were promoted according to the rankings established by the 2002 Roster; neither officer was skipped or promoted out of turn.

Although Plaintiffs were both ultimately promoted, they filed a three-count Complaint against the City, the Police Department and the individual members of the Board on September 20, 2006. Plaintiffs allege that by failing to promote them in March 2003, when officers ranked

4

below them on the 2000 Roster were recommended for promotion, though not promoted, Defendants discriminated against them in violation of 42 U.S.C. § 1983 ("Section 1983"), the New Jersey Constitution, the United States Constitution and the New Jersey Law Against Discrimination ("NJLAD"). They also claim that Defendants interfered with their employment rights, and that they were retaliated against for speaking out about being passed over for promotion. Defendants now move for summary judgment on all counts.

## II.     Standard of Review

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322-26; *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (2007). All facts and inferences must be construed "in the light most favorable to the non-moving party." *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

The party seeking summary judgment must initially provide the court with the basis for its motion. *Celotex Corp.*, 477 U.S. at 323. This requires the moving party to either establish that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322–23. Once the party

seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Celotex Corp.*, 477 U.S. at 324.

Once a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment under Fed. R. Civ. P. 56(c), the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set out specific facts showing a genuine issue for trial using affidavits or as otherwise provided in Fed. R. Civ. P. 56(e).

### III. Discussion

Martin and Butts claim that they were "purposefully and maliciously passed over for promotion to sergeant so that officers, who were more favored because of their political affiliation with the prevailing administration, were promoted instead." Plaintiffs' Opposition to Defendants City of East Orange's and East Orange Police Department's Motion for Summary Judgment at 4, *Martin v. City of East Orange*, No. 06-4293 (FSH) (D.N.J. Nov. 30, 2008) (hereinafter, "Opposition Brief"). Read in the most favorable light, Plaintiffs appear to assert violations of (1) their rights under the United States Constitution pursuant to 42 U.S.C. § 1983; (2) their rights under the New Jersey Constitution; and (3) their rights under the NJLAD. On summary judgment, Defendants contend that Plaintiffs were not unlawfully discriminated against in their employment by being bypassed for promotion in favor of more politically favored officers, both because Plaintiffs had no legitimate claim of entitlement to a promotion and

because Plaintiffs have failed to present a cognizable claim for discrimination under federal law. Defendants also challenge Plaintiffs' retaliation claims on the ground that Plaintiffs have failed to show the facts required to prevail on such claims. The Court addresses the federal claims in the instant opinion.

### A. Section 1983 and the United States Constitution

Plaintiffs allege that the Defendants deprived them of their federal constitutional rights in violation of Section 1983, presumably (1) by failing to promote each to the rank of sergeant in March 2003; (2) by discriminating against them on the basis of political affiliation or political favoritism;[3] (3) and by retaliating against them after they complained about not receiving promotions. These actions, Plaintiffs claim, violated their rights under the Fourteenth, and First

---

[3] Plaintiffs have asserted a cause of action for "failure to promote" as Count One of their Complaint. (Of course, their claim is, if anything, that they should have been promoted pursuant to the 2000 Roster rather than the 2002 Roster, or a "delayed promotion" claim, as they were, in fact, ultimately promoted.) They argue that the failure to promote was, simultaneously, a violation of Section 1983, the New Jersey Constitution, the United States Constitution and the NJLAD. In doing so, Plaintiffs appear to have conflated a number of distinct causes of action. Typically a "failure to promote" claim is made in this jurisdiction under the NJLAD. *See e.g., Pepe v. Rival*, 85 F. Supp. 349 (D.N.J. 1999); *Parker v. City of Trenton*, 2008 WL 2917184 (N.J. Super. A.D. 2008). In those cases, the non-promotion is seen as the manifestation of alleged discrimination. Although Plaintiffs attempt to argue that they were discriminated against by not receiving promotions in violation of federal or Constitutional law, the parties have presented no evidence that there is a federal cause of action that parallels this "discriminatory failure to promote" state law claim. Notably, both Martin and Butts specifically acknowledged at their depositions that they were *not* claiming discrimination on the basis of race, color, national origin, ethnic background, sex, age or disability. As a result, their failure to promote claims can not be considered actionable discrimination on the basis of membership in a protected class, pursuant to a specific federal law such as Title VII of the Civil Rights act of 1964. 42 U.S.C. § 2000e-2. However, this Court recognizes Plaintiffs' repeated references to Section 1983 and has attempted to discern distinct federal claims under the Fourteenth and First Amendments that apply to Plaintiffs' somewhat convoluted allegations.

Amendments, respectively.[4]

> In relevant part, Section 1983 provides that:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To sustain a Section 1983 claim, Plaintiff "must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived [Plaintiffs] of rights, privileges, or immunities secured by the law or the Constitution of the United States." *Williams v. Marino*, 2008 WL 2247090, *4 (M.D. Pa. May 30, 2008) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1998)).

The parties do not dispute that Defendants were acting in their official capacities at all relevant times and, therefore, under color of state law. Rather, Defendants dispute that the challenged actions deprived Plaintiffs of rights protected by the Constitution or laws of the United States and contend that no Constitutional or federal rights were violated.

### 1. "Failure to Promote" Claim

Plaintiffs argue, in essence, that by not promoting them in March 2003, Defendants

---

[4] In their Complaint, Plaintiffs state that Defendants' actions also constituted a violation of their rights under the Fourth Amendment. The Fourth Amendment to the U.S. Constitution, however, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Fourth Amendment rights are implicated in cases involving unlawful searches and seizures. There are no allegations in the Complaint that any Fourth Amendment violation occurred.

violated their Fourteenth Amendment right not to be deprived of "property" without due process. *See Board of Regents v. Roth*, 408 U.S. 564 (1972) (hereinafter, "*Roth*").[5] Defendants argue that because there is no Constitutional right to a promotion, Plaintiffs have failed to state a cause of action in this regard.[6] To state a cause of action for denial of substantive due process of a property interest under the Fourteenth Amendment, Plaintiffs must establish that they have a "legitimate claim of entitlement" to that which constitutes the property interest. *Pollock v. City of Ocean City*, 968 F. Supp. 187, 190 (D.N.J. 1997) (quoting *Roth*, 408 U.S. at 577).

In *Roth*, the United States Supreme Court stated:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.... To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Roth*, 408 U.S. 576-77. The issue becomes, therefore, whether Martin and Butts had a "legitimate claim of entitlement" to be promoted to the rank of sergeant in March 2003 pursuant

---

[5] The Fourteenth Amendment to the United States Constitution states, in relevant part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Although the Complaint does not specifically identify the challenged behavior as a deprivation of property, Plaintiffs present no allegations that the failure to promote them in March 2003 deprived them of life or liberty interests. Accordingly, the Court analyzes these claims as a challenge to the deprivation of property, pursuant to the framework established by *Roth* and similar cases.

[6] In their opposition papers, Plaintiffs incorrectly argue that this line of inquiry "has no bearing on these proceedings," because Section 1983 gives general protection against the deprivation of rights. This effort by Plaintiffs misreads Section 1983. Because Plaintiffs are challenging Defendants' failure to promote them to sergeant on a specific date and have cited the Fourteenth Amendment and Section 1983 as legal support, an analysis under *Roth* is the most appropriate manner in which to address their allegations.

to the Rule of Three, even when no other officers were in fact promoted ahead of them.

A constitutionally protected right to a promotion is not directly derived from the Constitution itself; such a right must be created by existing state or local law. As the Supreme Court also explained in *Roth*, a protected property interest in a promotion is "created and its dimension is defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577.

Plaintiffs have not even attempted to argue in their briefs that the Rule of Three or other state laws have created a protected property interest or present evidence that purports to establish a legitimate claim of entitlement to a promotion. Indeed, Plaintiffs don't not address the requirements established by *Roth* and other Fourteenth Amendment and Section 1983 precedents, claiming that such analysis "has no bearing on these proceedings." Moreover, Plaintiffs are unable to establish, as a matter of law, such a claim of entitlement under the Rule of Three. The Rule of Three was designed to limit discretion over promotions, not to remove discretion entirely or cement an entitlement to a promotion. *See Local 518*, 262 N.J. Super. at 600; *In re Martinez*, 403 N.J. Super. 58, 73 (App. Div. 2008) (explaining that the "purpose of the Rule of Three is to provide the appointing authority with a limited degree of discretion in the selection of a candidate for a civil service position," and that while the Rule permits "a broad exercise of discretion, [it] also operates to narrow that discretion.") (internal citations and quotations omitted). Moreover, even among the candidates holding the top three rankings, there is no presumption that the candidate who ranks highest on the eligibility list is entitled to an appointment. *Terry v. Mercer County Freeholders Bd.*, 86 N.J. 141, 149 (1981); *Hannafly v. Middletown Township*, 92

N.J.A.R.2d (CSV) 594, 600.

Courts in this district have previously rejected arguments similar to those Plaintiffs now advance. In *Pollock v. City of Ocean City*, for example, the plaintiff alleged that Ocean City's decision to deny him a promotion to deputy police chief and remove him as deputy coordinator of emergency management violated his rights under the Fourteenth Amendment. The court held that plaintiff's "failure to promote claims do not have a valid constitutional basis and are not cognizable under 42 U.S.C. § 1983." *Pollock*, 968 F. Supp. at 188. In finding that Pollock could not claim a legitimate entitlement to a promotion, the court also noted that:

> Although plaintiff took the civil service test, scored first, and enjoys preferential treatment as a veteran, he attained no entitlement to the position of deputy chief of police. One who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to an appointment. The only benefit inuring to such a person is that so long as the eligible list remains in force, no appointment can be made except from that list.

*Id.* at 190 (internal citations omitted); *see also Robb v. City of Philadelphia*, 733 F.2d 286, 292-93 (3d Cir. 1984) (holding that where a civil servant has only a limited right to continued employment and where a "promotion is neither a matter of right nor may it be promised," a plaintiff who was transferred to an equivalent position and denied a promotion failed "to demonstrate a property interest that can form the basis of a Fourteenth Amendment due process claim cognizable under § 1983.").[7] Courts in other jurisdictions have reached similar

---

[7] Suprisingly, Plaintiffs have not cited precedent involving individuals currently implicated in their own lawsuit. In *Grimes v. City of East Orange*, 285 N.J. Super. 154 (App. Div. 1995), Defendant Grimes, then the City's Deputy Chief of Police, sued the City and others alleging among other things the deprivation of his federal rights pursuant to Section 1983. The court held, however, that Grimes "had no federal right to be appointed Chief of the East Orange Police Department. He had the right to apply for and be considered for the post; that he was not appointed does not equate with a violation of any federal right." *Grimes*, 285 N.J. Super. at 164. The *Grimes* court also acknowledged that successfully passing a qualifying examination does not

conclusions when plaintiffs have been passed over for discretionary promotions. *See Bigby v. City of Chicago*, 766 F.2d 1053 (7th Cir. 1985) (holding that when a promotion is one of discretion, even though limited to a choice among the highest rated applicants based on qualifying test scores, a plaintiff has no vested right to that promotion); *U.S. v. City of Chicago*, 869 F.2d 1033 (7th Cir. 1989) (holding that under an Illinois law which gave promoting officials the "unfettered discretion to choose from among the five highest rated applicants for each available promotion," a candidate for promotion had no constitutional right to either the ranking on the promotional roster or the promotion itself)

      Plaintiffs here were ranked according to their qualifying test scores. When they reached the top of the eligibility roster they were entitled to be considered for a promotion, but were not entitled to the promotion itself. The recommended promotions of those ranked below Plaintiffs on the 2000 Roster were vetoed. No one was promoted out of turn ahead of Plaintiffs from the 2000 Roster. There was no legal entitlement to be promoted from the 2000 Roster. Furthermore, when the next roster was established (the 2002 Roster), Plaintiffs were promoted in accordance with their rank on that Roster. Accordingly, Defendants' failure to promote Martin and Butts in March 2003, and subsequent promotion of them in August 2004 and December 2005, respectively, pursuant to the 2002 Roster, did not deprive them of their rights under the Fourteenth Amendment.

      2.    **Political Discrimination Claim**

      Plaintiffs allege that they were not promoted in March 2003 because Defendants sought to promote other officers "who were more favored because of their political affiliation with the

---

create a vested right in a promotion. *Id*.

prevailing administration." Opposition Brief at 4. Such allegations appear to form the basis of a claim for political discrimination or political patronage in violation of the First Amendment. Defendants argue that Plaintiffs have completely failed to adduce evidence from which a reasonable jury could find that Plaintiffs were discriminated against on the basis of political favoritism.

As one court recently noted, "[p]olitical patronage is a practice as old as the American Republic." *Wheeler v. Township of Edison*, 2008 WL 1767017, *2 (D.N.J. 2008) (quoting *Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 394 (3d Cir.1998)) (internal quotations omitted). Courts have held, however, that it is a violation of the First Amendment to terminate, fail to promote, transfer or recall public employees because of their political affiliation, unless a policymaking position is involved. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 (1990) ("We therefore determine that promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees."); *see also Wheeler*, 2008 WL 1767017 at *4.

To prevail on a cause of action for political discrimination, a plaintiff must establish that (1) he or she was employed by a public agency in a position that does not require political affiliation; (2) he or she was engaged in constitutionally protected conduct; and (3) this conduct was a substantial or motivating factor in the employment decision. *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007).

Defendants concede that Plaintiffs' positions as police officers do not require political affiliation and that they are, therefore, able to satisfy the first prong of this test. Plaintiffs have, however, failed to produce any evidence from which a reasonable jury could find that they have

13

satisfied either the second or third prongs. Other than their subjective beliefs, Plaintiffs have adduced no genuine evidence that any of the five officers who were originally recommended for promotion by the Board were more politically favored by the Board or the City. In fact, Martin and Butts both testified that they had no direct knowledge that the individuals recommended for promotion were actually more politically favored by the administration.[8]

With respect to prongs 2 and 3 of this test, Plaintiffs have adduced no evidence that they were engaged in constitutionally protected conduct nor that any constitutionally protected conduct was a substantial or motivating factor in their promotion at a date later than they desired.[9] They have not provided deposition testimony or other documentary support for their

---

[8] Plaintiffs base their political discrimination claim almost entirely on one paragraph of their statement of undisputed material facts. According to that paragraph, "some of the patrol officers who were recommended for promotion by the Commissioners had a relationship with some of the Commissioners and were recommended for promotion based on that relationship." Opposition Brief at 10. This paragraph further states: "Plaintiffs assert that other patrol officers were promoted to circumvent the "Rule of Three" to allow for the promotions of favored patrol officers. Plaintiffs further assert that at least some of the commissioners maintained a relationship with candidates who were competing for promotion with Plaintiffs. Cross admitted at her deposition that she and the other Commissioners were invited to Officer Garvin's wedding. Cross also testified at her deposition that she knew Garvin and Officer Price and was less familiar with other officers. Plaintiffs admit that Lafayette Hamlet and Fred Kearse told Plaintiff Butts that Norman Price was able to talk to Police Commissioner Virginia Cross and explain why he should be promoted instead of other people."

[9] Plaintiffs' Opposition Briefs also fail to adduce any genuine evidence to support these claims. Plaintiffs summarily argue that they have "stated a claim under Section 1983 for violation of their constitutional rights because there is a constitutional right to be free from discrimination." They also incorrectly contend that "1983's plain language provides protections from discriminatory treatment, the manifestation of which is immaterial. Accordingly, Plaintiffs' claim, and Defendants' liability, must stand as a violation of Federal and State legislation, as well as Common Law Tenets." In making such arguments, Plaintiffs appear to ignore that although a claim for political discrimination in violation of the First Amendment may be cognizable under Section 1983, there are essential elements of that claim that must be established. No evidence in support of each required element has been adduced.

otherwise conclusory, subjective claims. As a result, Plaintiffs have failed to raise more than a metaphysical doubt as to the material facts at issue nor adduce facts from which a reasonable jury could conclude that Plaintiffs were discriminated against on the basis of political affiliation. The briefs filed by Plaintiffs simply stated a disinclination to address the elements of a Section 1983 action.

### 3. Retaliation

Plaintiffs also allege that they were retaliated against in violation of the right to freedom of speech as guaranteed by the First Amendment. Specifically, Plaintiffs claim that because they complained about being improperly bypassed for promotions, Defendants retaliated against them by additionally delaying their promotions, denying them special assignments while staffing them on the least favorable assignments, and disseminating harmful and untrue information about them.

To succeed on a First Amendment retaliation claim brought pursuant to Section 1983, Plaintiffs must establish (1) that they engaged in conduct protected by the First Amendment; (2) that they suffered an adverse employment action; and (3) that their protected conduct was a "substantial" or "motivating" factor in the adverse employment decision. *Ferraro v. City of Long Branch, et al.*, 314 N.J. Super. 268, 280 (App. Div. 1998); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). An employment action is adverse for the purposes of determining unlawful retaliation if it is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan* v. *Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000); *see also Marrero v. Camden County Board of Social Services*, 164 F. Supp. 2d 455, 467 (D.N.J. 2001) (noting that "an employment action is considered adverse, for the purposes of determining

15

unlawful retaliation, if it is likely to chill a person of ordinary firmness in the exercise of their First Amendment rights.") (internal quotations omitted).

Even assuming arguendo that Plaintiffs engaged in conduct protected by the First Amendment, they have not adduced sufficient evidence from which a reasonable jury could find either that they suffered an actionable, adverse employment action nor that their speech was a motivating factor in Defendants' actions. Plaintiffs were in fact promoted according to the rankings established by the 2002 Roster, and no officers ranking lower on that Roster were improperly promoted ahead of them. While Plaintiffs testified that they "believed" they were given "less favorable" assignments, they did not receive less pay for those assignments and at all times received the same base salary as similarly situated sergeants. The facts adduced by Plaintiffs consist of subjective beliefs that their assignments were less good. It is clear that their pay, retention and promotion were the same as the others.

Additionally, neither Martin nor Butts adduced any evidence that either complained about the promotional process to any of the Defendants or that any of the Defendants had knowledge of their complaints. They conceded at their depositions that they had no proof that their promotions were delayed because of their initial complaints. Without adducing evidence that Defendants in fact knew that Plaintiffs had complained, Plaintiffs cannot establish that a reasonable jury could infer that their complaints were a motivating factor in any subsequent employment decisions. *See Marrero*, 164 F. Supp. 2d. at 469. The deadline for the completion of discovery has expired. Beyond conclusory allegations that Plaintiffs' complaints "were ignored and used against [Plaintiffs] in a retaliatory fashion," Plaintiffs have failed to establish facts from which a reasonable jury could infer that Defendants knew of Plaintiffs' speech or took adverse action

16

against them because of such speech.

**IV.     Conclusion**

For the reasons set forth in this Opinion, the Court grants Defendants' Motions for Summary Judgment as to Plaintiffs' federal claims.  To the extent that Plaintiffs' Complaint raises state law claims, the Court declines to assert supplemental jurisdiction over them, pursuant to 28 U.S.C. §1367(c)(3), which provides that the district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if....the district court has dismissed all claims over which it has original jurisdiction." An appropriate Order will issue.


                                                                        s/ Faith S. Hochberg                    
                                                                        **Hon. Faith S. Hochberg, U.S.D.J.**